UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES EDWARD SCOTT, III,<br><br>                                        Plaintiff,<br><br>     v.<br><br>MITCHELL, *et al.*,<br><br>                                        Defendants. | Case No. 3:23-cv-00231-ART-CLB<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION (ECF NO. 48) |

   *Pro se* Plaintiff James Scott brings this civil rights action under § 1983 claiming his Eighth Amendment rights were violated when Defendants Melissa Mitchell ("Mitchell"), Gaylene Fukagawa ("Fukagawa"), Vanessa Timbreza ("Timbreza"), Kellen Prost ("Prost"), and Lorenzo Villegas ("Villegas") (collectively "Defendants") delayed the treatment of his AV fistula, resulting in the permanent loss of the fistula and necessitating an inferior form of dialysis treatment. (ECF No. 1-1.)

   Before the Court is Defendants' Motion for Summary Judgment (ECF Nos. 38, 40) of Mr. Scott's deliberate indifference claim. United States Magistrate Judge Carla L. Baldwin has issued a Report and Recommendation ("R&R") (ECF No. 48) recommending denial of Defendants' motion. Defendants have filed two objections to that R&R. (ECF No. 49.) For the reasons identified below, the Court overrules Defendants' objections, adopts the R&R, and denies the motion for summary judgment.

## I.    FACTS

   The Court adopts the following facts as recited in the magistrate judge's Report and Recommendation. (ECF No. 48 at 1-3.)

   Mr. Scott is a former inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events of his Complaint occurred while Mr. Scott was

housed at the Northern Nevada Correctional Center ("NNCC"). (ECF No. 1-1.)

Mr. Scott was diagnosed with end-stage kidney disease on May 17, 2019. (*Id.* at 6.) To treat this condition, Mr. Scott received dialysis through an AV fistula in his right arm. (*Id.* at 21.) On May 1, 2021, Mr. Scott noticed that his fistula was clotting. (*Id.*) Mr. Scott immediately sought emergency care at the infirmary in housing unit 8A. (*Id.*)

Mr. Scott explained the situation to Corrections Officer Kleymann and the John and Jane Doe nurses who were in the infirmary providing insulin to other inmates. (*Id.* at 21-22.) Mr. Scott emphasized that he needed medical staff to verify with a stethoscope that his fistula was clotting and, if so, to be immediately transported to the hospital for surgery to salvage it. (*Id.* at 22). Mr. Kleymann and the nurses refused to provide Mr. Scott care or even radio for other medical staff to help him. (*Id.*) Mr. Scott then sought help in unit 3's hospice area and spoke with a John Doe there who radioed Corrections Officer White in unit 8A. (*Id.*) White instructed Scott to return to the unit 8A infirmary. (*Id.*)

Upon his arrival at the infirmary, medical staff confirmed that Mr. Scott's AV fistula had "clotted off." (*Id.*) Mr. Scott advised Nurse John Doe that he needed emergency care at a hospital to salvage the fistula. (Id. at 22–23). John Doe failed to respond. (*Id.* at 23). The next day Mr. Scott confirmed with Melissa Mitchell, Gaylene Fukagawa, Vanessa, Malory, Kellen/Caroline, Kathy, and Lorenzo Villegas that his fistula had clotted, and he could not receive his life-saving dialysis treatment through it unless he quickly received hospital care to salvage it. (*Id.*) All agreed that Mr. Scott required hospital care on an emergency basis if he hoped to save his fistula. (*Id.*) Each of them was aware that receiving dialysis through a perma-catheter as opposed to an AV fistula exposed Mr. Scott to health and safety risks. (*Id.*)

Despite their knowledge of Mr. Scott's need for emergency treatment to repair his AV fistula, these Defendants waited 40 days before sending him to the

1    hospital. (*Id*.) At the hospital, Mr. Scott received a thrombectomy that failed to

2    remove the clot but resulted in a "gruesome scar, 17 staples going down his right

3    forearm, and substantial pain and suffering and mental and emotional trauma."

4    (*Id*. at 24). Because the hospital was unable to save Mr. Scott's AV fistula, he now

5    receives dialysis through a perma-catheter. (Id. at 24). This is an "inferior form of

6    dialysis" and a "permanent" change for treating Mr. Scott's kidney condition. (*Id*.)

7        Mr. Scott is highly susceptible to infection through his perma-catheter site,

8    so he must keep it clean and dry with sterile dressings. (*Id*. at 6–13). Prison

9    medical staff initially changed Mr. Scott's catheter-site dressings when the

10   medical staff who performed his dialysis treatment could not. But prison medical

11   staff eventually refused to change Mr. Scott's dressings, stating he can do the

12   procedure himself because "you wanna file grievances so much." (*Id*. at 8). Mr.

13   Scott has contracted a staphylococcus bacterial infection of his blood on

14   numerous occasions because he is forced to change his dressings himself and,

15   in his cell, which is not a sterile environment. (*Id*. at 6–13).

16       In January of 2025, Defendants filed a motion for summary judgment

17   seeking to dismiss Mr. Scott's claim for deliberate indifference to a serious

18   medical need. (ECF No. 38.) The magistrate judge then issued a report and

19   recommendation that recommending denial of Defendants motion, (ECF No. 48)

20   and Defendants timely objected (ECF No. 49). Defendants specifically claim that

21   the magistrate judge erred because, one, the record evidence shows that Mr.

22   Scott's rights were not violated, and two, there is not clearly established law to

23   put Defendants on notice. (*Id*.)

## II.    LEGAL STANDARD

### A. SUMMARY JUDGMENT

26       A party is entitled to summary judgment when "the movant shows that

27   there is no genuine issue as to any material fact and the movant is entitled to

28   judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp v.*

*Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex*, 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' . . . In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an

1    element essential to that party's case on which that party will have the burden of

2    proof at trial. *See Celotex*, 477 U.S. at 323-25.

3         If the moving party satisfies its initial burden, the burden shifts to the

4    opposing party to establish that a genuine dispute exists as to a material fact.

5    *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

6    The opposing party need not establish a genuine dispute of material fact

7    conclusively in its favor. It is sufficient that "the claimed factual dispute be shown

8    to require a jury or judge to resolve the parties' differing versions of truth at trial."

9    *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

10    1987) (quotation marks and citation omitted). The nonmoving party cannot avoid

11    summary judgment by relying solely on conclusory allegations that are

12    unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition

13    must go beyond the assertions and allegations of the pleadings and set forth

14    specific facts by producing competent evidence that shows a genuine dispute of

15    material fact for trial. *Celotex*, 477 U.S. at 324.

16        **B. QUALIFIED IMMUNITY**

17         "The doctrine of qualified immunity protects government officials from

18    liability for civil damages insofar as their conduct does not violate clearly

19    established statutory or constitutional rights of which a reasonable person would

20    have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity

21    is an immunity from suit rather than a defense to liability, and "ensures that

22    officers are on notice their conduct is unlawful before being subjected to suit."

23    *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014).

24         In deciding whether officers are entitled to qualified immunity, courts

25    consider (1) whether the facts show that the officer's conduct violated a

26    constitutional right, and (2) if so, whether that right was clearly established at

27    the time of the alleged violation. *Id.* The plaintiff bears the burden of proof that

28    the right allegedly violated was clearly established. *Romero v. Kitsap Cnty.*, 931

F.2d 624, 627 (9th Cir.1991). Thus, the plaintiff must prove that "a reasonable officer would have had fair notice that the action was unlawful." *Tarabochia*, 766 F.3d at 1125 (internal quotation marks omitted). A government official's conduct "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [the] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

While a case directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Further, the right must be defined at "the appropriate level of generality," and a court "must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000); *see also al-Kidd*, 563 U.S. at 741-42. The relevant question is whether the state of the law at the time gives officials fair warning that their conduct is unconstitutional. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013).

In the summary judgment context, judgment is appropriate in favor of the moving party only if, "taking the facts in the light most favorable to [the non-moving party], a reasonable jury could not find that the officer's conduct violated a constitutional right." *Young v. Cnty. Of Los Angeles*, 655 F.3d 1156, 1160 (9th Cir. 2011) (internal quotation marks omitted). Thus, a court adjudicating qualified immunity at the summary judgment stage must make two determinations: "(1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." *Green v. City & County of San Francisco*, 751 F.3d 1039, 1052 (9th Cir. 2014).

## C. EIGHTH AMENDMENT DELIBERATE INDIFFERENCE

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Claims of deliberate indifference are analyzed under a two-part test. The plaintiff must satisfy both an objective standard – that the deprivation was serious enough to constitute cruel and unusual punishment – and a subjective standard – deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

The subjective prong considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive

risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other..." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." Id. at 835 (internal quotation omitted).

Evidence of improper or ulterior motive can support a conclusion that a defendant failed to exercise sound medical judgment. *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (overruled in part on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)). Suspicions of malingering may also be considered an indication of an ulterior motive whereby a defendant failed to take a plaintiff's condition seriously and thus acted recklessly in failing to provide proper care. *George v. Sonoma County Sheriff's Dept.*, 732 F.Supp.2d 922, 937-938 (N.D. Cal. 2010).

Prison officials' conduct may be deliberately indifferent where their "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health.'" *Toguchi*, 391 F.3d at 1058 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett,* 439 F.3d at 1096.

**D. REVIEW OF REPORTS AND RECOMMENDATIONS**

Under the Federal Magistrates Act, a Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate

judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## III.    DISCUSSION

Defendants raise two objections to the magistrate judge's R&R. First, they claim there are sufficient facts to determine that the treatment Mr. Scott received was medically acceptable under the circumstances. Second, they argue that there was not clearly established law to put Defendants on clear notice of an Eighth Amendment violation. The Court addresses each of these objections below.

### A.    OBJECTION 1

Defendants object to the magistrate judge's finding of a genuine issue of material fact as to whether delaying Mr. Scott's thrombectomy procedure for thirty-three days was medically acceptable given their knowledge of his end-stage kidney disease and risks posed by the procedure. The Court overrules this objection.

Defendants argue that the medical records "blatantly contradict" Mr. Scott's explanation of his treatment because one post-operative note from Dr. Harlow after Mr. Scott's surgery claims that at the end of the procedure "the fistula was open and there was no evidence of stenosis." (ECF Nos. 49 at 4-5, 40-1 at 2-4); *see Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). They also argue that Mr. Scott's claims are "self-serving" and "without any medical support." (*Id.* at 5.)

1   Defendants claim that Mr. Scott's lack of citations to medical records or
2   authorities indicates that his personal attestations to the complications following
3   his surgery are inherently self-serving. Defendants' own citations to medical
4   authorities, however, offer support for Mr. Scott's claims. It is undisputed that a
5   hemodialysis catheter is a less-preferred form of permanent dialysis access. (ECF
6   No. 38 at 2 n. 3.) "Studies have demonstrated a clinically significant decrease in
7   the rate of infections, hospitalizations, catheter failure, central venous stenosis,
8   and mortality" with AV fistulas as compared to hemodialysis catheters. (*Id.*)
9   Thrombosis is the most common complication that may arise with AV fistulas,
10  which increases with the degree of stenosis. (*Id.*) Defendants do not offer any facts
11  or records that "blatantly contradict" Mr. Scott's account that dialysis was riskier
12  after the surgery due to his having to use a catheter: in fact, they cite to a report
13  that states that alternatives to AV fistulas do result in higher rates of
14  complications. (ECF No. 38 at 2 n. 3.) This is not a version of events that is "so
15  utterly discredited by the record that no reasonable jury could have believed" Mr.
16  Scott's understanding of the treatment. *Scott,* 550 U.S. at 380.

17  Throughout their treatment of Mr. Scott, medical professionals emphasized
18  the urgency necessitated by his condition. On August 14, a physician at CTH
19  found that Mr. Scott's fistula was "possibly stenosed." (ECF No. 40-1 at 26.) An
20  NDOC "consultation request/report" from August 16, 2021, notes that Mr. Scott
21  "needs above eval/intervention ASAP." (ECF No. 40-1 at 20.) On August 17, Dr.
22  Halow acknowledged that Mr. Scott had thrombosis. (ECF No. 40-1 at 7.) It took
23  ten days for a doctor to acknowledge the progress note and the procedure was
24  not scheduled for another twenty days. (*Id.*) What a medical professional intended
25  by ordering intervention "ASAP" and whether the surgery's delay caused
26  substantial harm are factual questions that must be decided by a factfinder.

27  Defendants' own records lack the necessary legibility to fully support their
28  claims that there were no complications following Mr. Scott's thrombectomy, as

they only cite the post-operative report on September 15, 2021, immediately following the surgery. (ECF No. 49 at 5.) This does not account for Mr. Scott's health in the days before surgery or the weeks that followed. At the very least, progress notes from September 9, September 10, October 22, October 26, October 29, November 2, November 18, and November 20 of 2021 are unreadable. (ECF No. 40-1 at 12-19.)

By October 13, 2021, NDOC physician's orders request an "eval/intervention" for CVC dialysis access "ASAP." (ECF No. 40-1 at 21.) Handwritten notes on a Sierra Nevada Nephrology-NNCC report from October 14, 2021, which are also largely illegible, include a note at the bottom covered by NDOC numerical page labeling that begins with "needs surgical eval." (ECF No. 40-1 at 8.)

Without having a full understanding of the preceding notes, it is unclear how Mr. Scott's condition deteriorated to require a different type of dialysis and need another evaluation "ASAP" just a month after surgery. Common sense would indicate that this course of treatment—an initial surgery (thrombectomy) performed with the intention of preserving an AV fistula that led to a second surgery to insert a perma-catheter (after the first surgery to salvage the AV fistula failed)—was not necessarily successful. These notes would be particularly relevant for the evaluating the side effects and complications that Mr. Scott says he experienced in the aftermath of the thrombectomy, and whether a subsequent surgical procedure could have been prevented. (ECF No. 40-1 at 16-18.)

A reasonable jury could find that Defendants acted with deliberate indifference towards Mr. Scott when they delayed his medical care based on the available records.

**B. OBJECTION 2**

Defendants next object that the magistrate judge's order does not identify the clearly established right that Defendants are alleged to have violated with

sufficient specificity. In particular, Defendants argue that the magistrate judge's reliance on *Stewart v. Aranas* is misplaced because it was interpreted at too high a level of generality and was decided in 2022, after the events at issue here. *Stewart v. Aranas*, 32 F.4th 1192, 1194-95 (9th Cir. 2022). The Court disagrees and overrules this objection.

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). "Although this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). Officials "can still be on notice that their conduct violates established law, even in novel factual circumstances." *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (citing *Hope v. Pelzer*, 536 U.S. 730, 731 (2002)).

The magistrate judge's reliance on *Stewart* was not misplaced because it confirmed a clearly established right: delaying medical treatment can violate the Eighth Amendment if it results in harm. *Stewart*, 32 F.4th at 1195 (citing *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014); *Shapley v. Nev. Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985)). As a starting point, the court in *Stewart* addressed the level of generality/specificity issue that Defendants raise, stating, "A case directly on point is unnecessary but the constitutional question must be 'beyond debate.'" *Id.* at 1195 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). The court in *Stewart* put the delay of medical treatment in the category of "beyond debate," explaining, "It is true that we have not found a case

on all fours with the factual context presented here. But it has been established that 'deny[ing], delay[ing], or intentionally interfer[ing] with medical treatment' can violate the constitution." *Id.* (citing *Colwell*, 763 F.3d at 1066). The fact that *Stewart* was decided in 2022, after the conduct in this case, is immaterial because *Stewart* merely confirmed that the delay of medical treatment as a clearly established right is "beyond debate" and that right predated *Stewart*. *Id.*

Defendants also argue that *Stewart*, and by extension, *Shapley v. Nev. Bd. of State Prison Comm'rs*, are not analogous because the duration of the delay of treatment was years instead of weeks. *Stewart*, 32 F.4th at 1194-95. A doctor's awareness of a need for treatment, followed by unnecessary delay in implementing the prescribed treatment, may be found medically unacceptable. *Wilhem v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012); *see also Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019) ("Accepted standards of care and practice within the medical community are highly relevant in determining what care is medically acceptable and unacceptable."). The Ninth Circuit has found that a delay of as little as six days in treating hepatitis could support a claim of deliberate indifference, *Broughton v. Cutter Labs*, 622 F.2d 458, 459-60 (9th Cir. 1980) (per curiam), while a delay of three months was found inappropriate for a dental procedure, *Hunt v. Dental Dept.*, 865 F.2d 198, 201 (9th Cir. 1989). A court in the District of Nevada has held that a failing to check a hypertensive patient's blood pressure weekly amounted to medically unacceptable delay and deliberate indifference. *Villaverde v. Aranas*, No. 2:18-cv-00921-GMN-EJY, 2022 WL 943067 at *10 (D. Nev. Mar 28, 2022) (denying qualified immunity). Therefore, although Mr. Scott's delay of treatment was shorter in duration than *Stewart* or *Shapley*, case law still supports a finding that depending on the treatment required, a delay of thirty-three days could be inappropriate. Defendants do not provide any evidence of accepted standards of care or practice that would prove otherwise.

1    Construing the facts in a light most favorable to Mr. Scott, Defendants
2    knew that Mr. Scott suffered from a clotted AV fistula, and after receiving medical
3    advice for evaluation and intervention "as soon as possible," waited ten days
4    before signing off on a procedure and twenty more days to schedule it. (ECF Nos.
5    38 at 9-10, 40-1 at 20.) Mr. Scott alleges that by waiting more than a medically
6    appropriate three to four days to perform the procedure, he lost the ability to
7    utilize a medically superior form of dialysis and has subsequently suffered from
8    a variety of different health issues, ranging from infections to unnecessary
9    surgical procedures. (ECF No. 46 at 2.) Mr. Scott has offered evidence that
10   Defendants unacceptably delayed urgent medical treatment and that he suffered
11   long term negative health consequences as a result of that delay. Defendants
12   have failed to offer any evidence to the contrary.

13   Ninth Circuit case law clearly establishes with sufficient specificity that an
14   unnecessary delay in treatment is a violation of the Eighth Amendment. There is
15   a dispute of material fact as to whether Defendants' delay of Mr. Scott's treatment
16   amounted to deliberate indifference under the circumstances.

17   **V.    CONCLUSION**

18   It is therefore ordered that Defendants' objections to the Report and
19   Recommendation (ECF No. 49) are OVERRULED.

20   It is further ordered that the Report and Recommendation recommending
21   denial of summary judgment for Defendants (ECF No. 48) is accepted and
22   ADOPTED.

23   It is further ordered that Defendants' motion for summary judgment (ECF
24   No. 38) is DENIED.

25   //
26   //
27   //
28   //

1    Dated this 26th day of September 2025.

2

3

4    ANNE R. TRAUM
5    UNITED STATES DISTRICT JUDGE